*794
 
 Opinion
 

 JOHNSON, J.
 

 Defendant challenges the condition of her probation requiring restitution under Penal Code section 1202.4.
 
 [1]
 
 We conclude the trial court properly found a nonprofit trade association stood in the shoes of the direct victims of defendant’s crime and was entitled to restitution for economic loss incurred as the result of the defendant’s criminal conduct. We also conclude the amount of restitution ordered was rationally calculated and based on substantial evidence. Therefore, we affirm the judgment.
 

 Facts and Proceedings Below
 

 Defendant Vicenta R. Ortiz was found to have possessed for sale approximately 53,000 counterfeit cassette tapes. She was convicted on one count of violating section 653w, subdivision (a)
 
 [2]
 
 and placed on five years’ probation. As a condition of probation, the trial court ordered Ortiz to pay restitution to the Association of Latin American Record Manufacturers (ALARM).
 

 The evidence at trial and at Ortiz’s restitution hearing showed ALARM is a nonprofit trade association representing various Latin American music labels in an effort to find and destroy counterfeit versions of their recordings and assist in the prosecution of persons involved in the counterfeiting. Following up on a tip, ALARM sent undercover investigators to Ortiz’s home where they purchased 500 counterfeit tapes for 75 to 80 cents per tape. Based on the information from ALARM’S investigators, Los Angeles police officers obtained a search warrant which led to the seizure of approximately 53,000 counterfeit tapes from Ortiz’s home along with price lists, material used in packaging cassettes and $1,150 hidden in her dresser drawer. ALARM paid the costs of transporting and storing the counterfeit tapes and destroying all except a few used in evidence at trial. ALARM sought restitution of these investigatory expenses plus $10 per tape ($530,000) representing the “potential loss” to its members from the sale of the counterfeit tapes.
 

 After considering this evidence, the trial court ordered Ortiz, as a condition of her probation, to pay restitution to ALARM in the sum of $7,639.65 representing $5,639.65 for investigatory costs and $2,000 for estimated economic loss.
 

 
 *795
 
 On appeal, Ortiz contends ALARM was not entitled to any restitution because it was not a “direct victim” as required by section 1202.4, subdivision (p).
 
 [3]
 
 She further contends even if ALARM was a direct victim of her crime it is not entitled to recover investigatory costs and there was no evidence to support the award for economic loss. For the reasons explained below, we disagree.
 

 Discussion
 

 I.
 
 Restitution Was Properly Awarded to a Trade Association Representing the Direct Victims of the Defendant’s Crime.
 

 In enacting section 1202.4, the Legislature declared its intent “that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Victims entitled to restitution include “any corporation, business trust, estate, trust, partnership,
 
 association,
 
 joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity
 
 when that entity is a direct victim of a crime.”
 
 (§ 1202.4, subd. (p) [now subd. (k)], italics added.)
 

 In
 
 People
 
 v.
 
 Crow
 
 (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80], the court held a “victim,” for purposes of the restitution statutes, is a “ ‘person who is the object of a crime (Citation omitted.) Ortiz argues the record companies which formed ALARM were the objects or, in the words of the statute, the “direct victims,” of the crime because it was their tapes which were counterfeited. ALARM was not a victim at all because it had nothing to do with the production or sale of the genuine tapes. ALARM was formed for the purpose of combating crime against its members. Thus, investigating the sale of counterfeit tapes was ALARM’S job. ALARM is not the “victim” of a crime merely because it expended funds investigating it. The police also expend funds investigating crime but this does not make them crime “victims” entitled to restitution under section 1202.4. If anything, ALARM is but an indirect victim of the crime to the extent it expended money for investigative services. Indirect victims, however, are not entitled to restitution. (§ 1202.4, subd. (p);
 
 People
 
 v.
 
 Sexton
 
 (1995) 33 Cal.App.4th 64, 71 [39 Cal.Rptr.2d 242].)
 

 
 *796
 
 We reject Ortiz’s narrow interpretation of section 1202.4. Under the facts of this case, treating ALARM as a direct victim is consistent with the language of the statute and the clearly expressed public policy of this state.
 

 If the companies which make up ALARM combated piracy of their recordings individually instead of through a trade association, there can be no doubt the companies would be entitled to restitution as “direct victims” of Ortiz’s crime. We see no reason why these companies cannot form a nonprofit association to combat tape piracy and obtain restitution on their behalf. This not only makes good business sense but, in the case of foreign companies, it may be the only practical solution, as we discuss below. In the present case, ALARM stands in the shoes of the direct victims as their designated representative in the United States to protect their interests with respect to the counterfeiting of their products. Section 1202.4, subdivision (p) explicitly recognizes an association can be a direct victim and we presume the Legislature knows an association is an organization of people or other entities joined for a common purpose. (See West’s Legal Thesaurus/ Dictionary (1985) p. 68.)
 

 Furthermore, permitting an association such as ALARM to seek restitution is consistent with the will of the People as expressed by them directly and through the Legislature.
 

 Restitution has long been considered a valid condition of probation because of its rehabilitative value. (§ 1203.1, subds. (a)(3), (b);
 
 People
 
 v.
 
 Carbajal
 
 (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].) Restitution is seen as a “ ‘ “deterrent to future criminality” . . .”’ and as a tool “‘“to rehabilitate the criminal.”. . .’”
 
 (People
 
 v.
 
 Crow, supra, 6
 
 Cal.4th at p. 957, citations omitted.) Requiring the defendant to make complete reparation to her victims for the harm done to them is more likely to make an impression on the defendant than simply imposing a statutory fine.
 
 (People
 
 v.
 
 Miller
 
 (1967) 256 Cal.App.2d 348, 356 [64 Cal.Rptr. 20].)
 

 Furthermore, in 1982, the voters passed Proposition 8 making entitlement to restitution the constitutional right of every crime victim. (Cal. Const., art. I, § 28, subd. (b).)
 
 [4]
 
 This constitutional provision also directed the Legislature to enact laws empowering trial courts to order restitution when sentencing convicted criminals.
 
 (Ibid.)
 
 Sections 1202.4 and 1203.04 were enacted to implement this constitutional right. (See fn. 3,
 
 ante.)
 
 In view of the strongly
 
 *797
 
 expressed concern for persons who have suffered loss as the result of criminal conduct, our Supreme Court has given the term “victim” a broad and flexible meaning.
 
 (People
 
 v.
 
 Crow, supra,
 
 6 Cal.4th at pp. 959-960 [“victim” includes government agencies and nonresidents];
 
 People
 
 v.
 
 Broussard
 
 (1993) 5 Cal.4th 1067, 1075 [22 Cal.Rptr. 278, 856 P.2d 1134] [“victim” includes anyone suffering an economic loss, not merely physical injury].)
 

 Under Proposition 8 and its implementing legislation, as interpreted by our Supreme Court, foreign residents are entitled to restitution for economic loss suffered as the result of criminal activity in this state. (See
 
 Crow
 
 and
 
 Broussard.)
 
 Nevertheless, where there are numerous victims of the defendant’s criminal activity and those victims are foreign residents, it may be impracticable if not impossible for each of them, individually, to discover and seek restitution for crimes involving their property interests in California. Unless they can bind together to seek restitution under one representative organization, these crime victims effectively could be denied the compensation to which they are entitled and the defendant could escape her responsibility to make restitution for the economic loss she has caused. Such a result would be contrary to the policy behind making restitution a condition of probation as well as the express intent and purposes of Proposition 8 and its implementing legislation.
 

 II.
 
 The Restitution Award Was Rationally Calculated and Based on Substantial Evidence.
 

 A.
 
 Out-of-pocket Investigation Expenses.
 

 At the time Ortiz was convicted and sentenced, section 1202.4, subdivision (g) (now subdivision (f)) provided in relevant part: “Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant’s criminal conduct, including . . . [¶ . . . [¶ (4) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution.”
 

 The evidence showed ALARM incurred $5,639.65 in out-of-pocket expenses assisting the police in the investigation and prosecution of this case.
 
 [5]
 
 These expenses clearly constitute “economic loss incurred as the result of the defendant’s criminal conduct” and thus were subject to restitution under section 1202.4, subdivision (g). (Cf.
 
 People
 
 v.
 
 Lyon
 
 (1996) 49
 
 *798
 
 Cal.App.4th 1521, 1524-1525 [57 Cal.Rptr.2d 415] [legal expenses incurred to prevent defendant from dissipating assets which could be used for restitution were themselves subject to restitution under section 1202.4, subdivision (g)].)
 

 We reject Ortiz’s argument the statute required the victim to demonstrate a link between out-of-pocket expenses and the loss of wages or profits in order to obtain restitution of the out-of-pocket expenses. We do not read the statute as limiting restitution for out-of-pocket expenses to cases in which out-of-pocket expenses result in lost profits or wages. Such an interpretation would mean an elderly widow living on Social Security could not recover her out-of-pocket expenses in assisting the police recover her stolen check. We do not believe the Legislature intended such an absurd result. Furthermore,
 
 People
 
 v.
 
 Friscia
 
 (1993) 18 Cal.App.4th 834 [22 Cal.Rptr.2d 656] on which Ortiz relies, does not support her argument. In
 
 Friscia,
 
 the court reversed a restitution order compensating the victims for the time they spent in calculating their losses from the defendant’s embezzlement. The victims in
 
 Friscia
 
 did not show the time they spent in this endeavor resulted in economic loss of any kind and the court held the loss of time per se was not compensable under former section 1203.4, subdivision (d), (the equivalent of section 1202.4, subdivision (g).) (18 Cal.App.4th at p. 838.) Because the victims did not seek reimbursement for any out-of-pocket expenses incurred in calculating their losses from the embezzlement,
 
 Friscia
 
 is distinguishable on its facts from the case before us.
 

 B.
 
 Restitution for Lost Sales.
 

 Under section 1202.4, subdivision (a)(1) a crime victim is entitled to restitution for “any economic loss” incurred as the result of the defendant’s criminal activity.
 

 ALARM sought restitution for economic loss in the amount of $530,000 based on the theory the genuine tapes would sell for approximately $10 each; thus, if Ortiz sold the 53,000 counterfeit tapes in her possession, ALARM’S members would lose $530,000 in sales of the genuine tapes. When the court pointed out the 53,000 counterfeit tapes had been recovered and therefore could not be sold, ALARM responded there was “a potential loss” because “they were going to be sold.”
 

 The court properly rejected ALARM’S “potential loss” theory of recovery. The court then went on to develop ALARM’S original theory of recovery
 
 *799
 
 based on loss of sales. There was no doubt Ortiz was engaged in selling counterfeit versions of ALARM members’ tapes. ALARM’S investigators testified they purchased such tapes on the street from a person who identified Ortiz as her supplier and on two occasions they had purchased boxes containing two hundred fifty counterfeit tapes from Ortiz herself. Furthermore, when the police arrived at Ortiz’s home with a search warrant they found approximately 53,000 counterfeit tapes. There was no direct evidence, however, of how many counterfeit tapes Ortiz had sold before she was arrested. The court dealt with this lack of direct evidence by extrapolating the amount of loss from the evidence it did have such as the $1,150 found in Ortiz’s bedroom, the presence of the 53,000 counterfeit tapes, the fact Ortiz was selling the tapes for 75 to 80 cents per tape and the fact Ortiz appeared to find nothing unusual about selling the tapes in lots of 250. Based on this evidence, the court estimated Ortiz had sold 2,000 tapes prior to her arrest. Calculating the loss to ALARM’S member’s at $1 per tape, the court awarded ALARM $2,000 as restitution for lost sales.
 

 Ortiz attacks the court’s loss calculation as arbitrary, capricious and totally lacking an evidentiary foundation. However, as we shall explain, the court’s award had a rational basis which is all that is required in calculating the amount of restitution.
 

 As previously noted, the California Constitution provides crime victims have a “right to restitution from the persons convicted of crimes for the losses they suffer.” (Cal. Const., art. I, § 28, subd. (b).) In implementing this constitutional right to restitution, the Legislature has stated its intent “a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime.” (§ 1202.4, subd. (a)(1).) The restitution statute also states: “Restitution . . . shall be imposed in the amount of the losses, as determined. . . . Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant’s criminal conduct. . . .” (§ 1202.4, subd. (g).)
 

 From the foregoing constitutional and statutory provisions we perceive two essential requirements for awarding restitution: (1) the victim must have suffered a loss “as a result of the commission of a crime”; and (2) the amount of the loss must be “determined” by the court.
 

 In the present case, it is undisputed ALARM’S members suffered a loss of sales due to Ortiz’s piracy of their product. Its investigators learned about Ortiz through an informant who was selling the pirated tapes on the street.
 

 
 *800
 
 We interpret the requirement the amount of loss be “determined” by the court to mean the court must decide the amount of the loss on grounds which will withstand review for abuse of discretion. We base our interpretation of the statute on the well-established rule “. . . the trial court is vested with broad discretion in setting the amount of restitution [and] it may ‘ “use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole.” ' . . .”
 
 (People
 
 v.
 
 Tucker
 
 (1995) 37 Cal.App.4th 1, 6 [44 Cal.Rptr.2d 1], citations omitted.) Thus, while the amount of restitution cannot be arbitrary or capricious, “[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. . . .”
 
 (People
 
 v.
 
 Carbajal, supra,
 
 10 Cal.4th at p. 1121, citations omitted.)
 
 [6]
 

 We conclude the trial court’s restitution award of $2,000, based on the estimated sale of 2,000 counterfeit tapes, was rationally based. From the fact the police found $1,150 hidden in Ortiz’s dresser drawer and the fact Ortiz was selling the tapes for 75 to 80 cents each, the court could reasonably conclude the $1,150 represented the sale of approximately 1,500 tapes. Ortiz also possessed material for labeling and packaging the counterfeit tapes which the court could reasonably infer was purchased with the proceeds from selling another 500 tapes. Setting the amount of loss to the ALARM members at $1 per tape was a very conservative calculation which benefited Ortiz because Richardson testified a genuine cassette tape could not be produced for $1.
 

 Disposition
 

 The judgment is affirmed.
 

 Lillie, P. J., and Woods, J., concurred.
 

 A petition for a rehearing was denied April 10, 1997, and appellant’s petition for review by the Supreme Court was denied June 11, 1997.
 

 [1]
 

 All statutory references are to the Penal Code.
 

 [2]
 

 This statute makes it a felony to sell or offer for sale, inter alia, a thousand or more audio recordings without disclosing the origin of the recordings.
 

 [3]
 

 As we discuss more fully below, section 1202.4 and former section 1203.04 were among the statutes passed to implement the constitutional right of crime victims to restitution from the perpetrator. (Cal. Const., art. I, § 28, subd. (b).) Section 1203.04 was repealed, and its provisions on restitution as a term of probation were incorporated into section 1202.4, effective August 3, 1995. (Stats. 1995, ch. 313, §§ 5, 8.) References to section 1202.4 are to the statute as it read at the time of defendant’s conviction in September 1995. To the extent the provisions of section 1202.4 and 1203.04 were identical we rely on cases interpreting either section. (See
 
 People
 
 v.
 
 Beck
 
 (1993) 17 Cal.App.4th 209, 220 [21 Cal.Rptr.2d 250].)
 

 [4]
 

 Califomia Constitution, article I, section 28, subdivision (b) provides in pertinent part: “It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for the losses they suffer.”
 

 [5]
 

 Contrary to Ortiz’s contention, it was not necessary for ALARM to present documentary evidence of each of these expenditures. Maurice Richardson, ALARM’S executive director,
 
 *798
 
 testified without contradiction he paid these sums from ALARM funds and the trial court found his testimony credible. Therefore substantial evidence supports the award.
 

 [6]
 

 Of course, where the statute requires a specific basis for determining the loss, as in the case of stolen or damaged property (see current § 1202.4, subd. (f)(3)(A)), the court must determine the loss on that basis.
 
 (People
 
 v.
 
 Vournazos
 
 (1988) 198 Cal.App.3d 948, 958 [244 Cal.Rptr. 82].)