Filed 3/27/14  In re K.E. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.E., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.E.,<br><br>Defendant and Appellant. | A138286<br><br>(Alameda County<br> Super. Ct. No. SJ12019213) |

This is an appeal from an order imposing upon minor K.E. joint and several liability for $1,773.35 in restitution to the victim of his misdemeanor assault, Hayward Area Recreation and Park Ranger Jason McNie.  Specifically, minor challenges the amount of restitution to the extent it includes a $28.50 charge for certain administrative fees incurred by the victim's employer's workers compensation insurer.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On July 3, 2012, a juvenile wardship petition was filed in Alameda County pursuant to Welfare and Institutions Code section 602 (section 602 petition), alleging that minor committed battery upon a peace officer engaged in the performance of his duties (Pen. Code, § 243, subd. (b))(count one), and assault upon a code enforcement officer

1

engaged in the performance of his duties (Pen. Code, § 241, subd. (c)) (count two).[1] These allegations stemmed from the following undisputed events of June 21, 2012.

At about 2:00 p.m., minor attended a skateboarding event at Holland Skate Park organized by Robert Ferguson. After Ranger McNie approached Ferguson to inform him he was being cited for promoting an unauthorized event, minor and several other juveniles surrounded him, warning against issuing a citation. As the crowd's agitation increased, minor and a few others aggressively approached Ranger McNie with clenched fists. Feeling threatened, Ranger McNie pulled out a canister of pepper spray and warned the juveniles to retreat. When they failed to do so, Ranger McNie sprayed three of them, including minor, with the pepper spray, prompting several of the juveniles to jump on him. Minor, in particular, placed his hands on the ranger's neck and helped the other juveniles force him to the ground in an attempt to grab the pepper spray. Ranger McNie struggled with the juveniles and attempted to detain them, at which point they ran away. While scratches on his forearm were the only visible injuries the day of the attack, the next day, Ranger McNie sought medical attention at the hospital for a headache and soreness in his neck, back, hip and knee. He was prescribed Motrin and Valium for pain.

On July 9, 2012, minor admitted committing the assault offense identified in count two, and count one was dismissed at the prosecutor's request. At the subsequent disposition hearing on July 23, 2012, the juvenile court declared minor a ward of the court and placed him on probation subject to various terms and conditions. The juvenile court reserved the issue of restitution for a later hearing.

In preparation for the restitution hearing, the probation officer submitted a report recommending that the court order restitution to Ranger McNie (hereinafter, the victim) in the amount of $1,773.35. The report was accompanied by documentation from York Insurance Group (York), the victim's employer's workers compensation insurer, which provided an itemized list of expenses incurred in connection with the victim's various

---

[1]      Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

2

medical services.  This list included two charges, for $19 and $9.50, respectively, for "bill review" fees paid by York to Medical Audit and Management, Inc.

At the February 4, 2013 restitution hearing, minor's counsel did not challenge any specific charge identified in the probation report or its accompanying documentation from York.  Minor's counsel did, however, challenge the standing of York to recover restitution and request that the restitution amount be limited to the victim's out-of-pocket expenses, not expenses covered by York.

After argument, the juvenile court ordered minor to pay $1,773.35 in restitution directly to the victim, the amount requested by the probation department, to cover costs incurred as a result of minor's misdemeanor assault and to deter his future criminality. Further, the court ordered that minor's restitution liability would be joint and several with that of two other juveniles involved in the attack.  This timely appeal followed.

## DISCUSSION

Minor raises a single challenge to the restitution order.  He argues the juvenile court erred in ordering him to pay $28.50 in restitution to the victim to cover the two bill review charges ($19 and $9.50, respectively) because these charges are "costs related to administering [the victim's employer's] insurance plan" rather than economic losses incurred by a "direct victim" of his crime within the meaning of the governing statute, section 730.6.  The following background is relevant.

"[T]he declared purpose of [section 730.6] is to ensure 'that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor.' (§ 730.6, subd.(a)(1).) The statute directs that the court in such a case 'shall order the minor to pay . . . [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h).' (§ 730.6, subd.(a)(2).) It goes on to provide, in pertinent part, 'Restitution . . . shall be imposed in the amount of the losses, as determined. . . .  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a

3

restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order. A restitution order . . . shall be of a dollar amount sufficient to *fully reimburse the victim or victims for all determined economic losses incurred* as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following:  [¶] . . . [¶] (2) Medical expenses. . . .' (§ 730.6, subd.(h), italics added.)"  (*In re K.F.* (2009) 173 Cal.App.4th 655, 659-660.)

"The standard of review of a restitution order is abuse of discretion.  'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]"  (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

Applying these legal standards to the facts at hand, we find no abuse of discretion. Both the facts and law are straightforward.  The juvenile court included in the total amount of victim restitution two charges totaling $28.50 for bill review fees.  The court reasoned that York's documentation provided competent evidence regarding the amount of the victim's economic losses for medical expenses, and that California law required the order to be sufficient to make the victim whole for the monetary consequences of minor's conduct without regard to insurance coverage.   Finally, the court added that the restitution was to be paid to the victim, not to York.  The court's reasoning was both rational and legal.

"Section 730.6 expressly states that 'economic losses,' not monies expended, is the governing test."  (*In re Johnny M., supra,* 100 Cal.App.4th at p. 1132.)  "The term 'economic losses' is thus entitled to an expansive interpretation."  (*Id.* at p. 1133.)  To constitute evidence of a "loss incurred," there need only be "some basis to conclude that the victim is 'liable or subject to' a charge."  (*In re K.F.*, *supra*, 173 Cal.App.4th at p. 663.)  Moreover, the court may consider the public policy goals of rehabilitating the minor and deterring future criminal conduct when making this conclusion.  (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1208-1209 ["[California's statutory scheme] confers broad power on the courts to impose conditions to foster rehabilitation and to protect public

4

safety. [Citation.] This power includes ordering restitution, if such a condition is reasonably related to the crime of which the defendant was convicted or to future criminality"].)  And, of particular significance here, the court need not – in fact, must not – consider whether the victim has been or will be reimbursed for these losses from any third party, including an insurer.  The underlying rationale is well-established:  "The purpose behind requiring a minor to pay victim restitution is for its deterrent as well as rehabilitative effect. [Fn. omitted.]  'Requiring the [minor] to make complete reparation to her victims for the harm done to them is more likely to make an impression on the [minor] than simply imposing a statutory fine. [Citation.] [Fn. Omitted.]'  These purposes would be thwarted if a minor was relieved from responsibility for making her victims whole simply because the victims had been farsighted enough to purchase insurance for this type of damage . . . . Moreover, the principles announced by our Supreme Court in *People v. Birkett* [(1999) 21 Cal.4th 226, 246] make clear, trial courts are not to consider whether the victim has been, or will be, reimbursed from third parties in ordering victim restitution. . . . [¶¶]  . . . [After examining the] statutory scheme the court concluded:  'It appears clear from th[e] statutory language that the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all "losses" *his crime had caused*, and that such reparation should go entirely to *the individual or entity the offender had directly wronged*, regardless of that victim's reimbursement from other sources.' "[2]  (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1387-1389; accord *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272-1273 [the

---

[2]    As noted in *In re Brittany L., supra,* 99 Cal.App.4th at p. 1386, the California Supreme Court in *People v. Birkett* was interpreting the 1994 version of Penal Code section 1203.04, which contains virtually identical provisions governing restitution to the victims of adult offenders.  Our appellate colleagues in the Second District, Division Seven, summarized the high court's decision as follows: "After holding the insurance company did not become a direct victim of crime entitled to restitution, the *Birkett* court considered whether the trial court nevertheless had discretion to allocate restitution between the victim and the insurance company. The court held the trial court did not have such discretion because the statutory scheme gave the victim the right to recover *the full amount* of the loss caused by the defendant's criminal conduct." (*In re Brittany L., supra,* 99 Cal.App.4th at p. 1388.)

victim need not suffer direct economic losses to recover restitution and, in fact, may recover "even though the victim could conceivably profit . . . if defendant complies with the restitution order and if Medicare and/or Medi-Cal does not pursue reimbursement"].)

Here, the two challenged bill review charges totaling $28.50 fall within this intentionally-broad definition of "economic losses" for purposes of section 730.6. Simply put, the juvenile court could rationally conclude that, but for minor's and his accomplices' crimes against the victim and the resulting injuries, these expenses would not have been incurred by York on the victim's behalf. Nothing more – including, as minor argues, a showing that York was itself a "direct victim" of his crime – was required on this record.[3] (*People v. Birkett, supra,* 21 Cal.4th at p. 246; see also *People v. Foster* (1993) 14 Cal.App.4th 939, 946-947 [defendant has the opportunity to rebut a proposed restitution amount, yet bears the burden of proof in doing so].)

Thus, because the amount of restitution awarded under the challenged order was "sufficient to fully reimburse the victim . . . for all *determined* economic losses incurred as the result of [minor's] conduct . . . ," it was a proper exercise of the court's broad discretion regardless of whether such losses were ultimately borne by a third party.[4] (§ 730.6, subd. (h).)

---

[3] Minor's authority, *People v. Runyan* (2012) 54 Cal.4th 849, 867, which held that the estate of a victim wrongfully killed due to criminal conduct is not a "direct victim" entitled to restitution for economic losses accruing after the victim's death, is inapposite.

[4] Because we affirm the order on the merits, we need not address the parties' alternative arguments relating to whether minor forfeited the right to challenge the bill review charges.

## DISPOSITION

The restitution order of February 4, 2013 is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

7