Filed 3/5/15  In re C.E. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re C.E., a Person Coming Under the Juvenile Court Law. | C076792 |
| THE PEOPLE, | (Super. Ct. No. JV134843) |
| Plaintiff and Respondent, | |
| v. | |
| C.E., | |
| Defendant and Appellant; | |
| L.P., | |
| Appellant. | |

The minor C.E. admitted an allegation in a wardship petition (Welf. & Inst. Code, § 602)[1] that he violated Vehicle Code section 23153, subdivision (a) by driving while under the influence of alcohol and causing bodily injury.  He also admitted an

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

enhancement allegation that he inflicted great bodily injury. (Pen. Code, § 12022.7, subd. (a).) The juvenile court placed the minor on probation with 90 days in juvenile hall.

Following a contested restitution hearing, the juvenile court awarded $376,200 in victim restitution, specifying that the minor's mother would be jointly and severally liable for $39,300.

On appeal, the minor and his mother (collectively the minor) contend the juvenile court (1) failed to properly apply section 730.6 in awarding restitution for lost commission income, because section 730.6 required the victim to show a 12-month income pattern; and (2) failed to offset the restitution with income earned by the victim during the relevant time period.

We conclude the juvenile court did not improperly apply section 730.6, and the restitution award included an offset for the victim's earnings. We will affirm the juvenile court's restitution order.

BACKGROUND

The minor drank seven beers and two shots at a friend's house on July 22, 2012. He subsequently lost control of the car he was driving and collided head-on with another car driven by a victim who sustained numerous injuries including a compound fracture to his leg. The collision rendered the victim permanently disabled. A blood-alcohol test immediately after the accident showed that the minor had a blood-alcohol content of 0.08 percent.

The victim completed and signed a restitution form identifying reimbursable losses consisting of $280,059 in medical expenses and $96,231 in lost wages. The victim also attached medical bills and the deposition of Patricia Motmans, who worked in the human resources department for the Von Housen Automotive Group. The victim had been hired by the Von Housen Automotive Group (Von Housen) as a sales associate in July 2012. Sales associates did not receive an hourly wage, but were compensated based

2

on the number of units sold.  Although the auto industry generally had turnover with salespeople, Von Housen was unique, the "crème de la crème."  New sales associates did not have a probationary or training period.  Only one sales associate left in 2012, a recent hire who returned to his old job.  Two new sales associates started in 2012.  The associate with prior sales experience averaged $7,448.74 a month, while the other, who had no prior sales experience and eventually quit to go to his prior employment, earned $4,532.76 a month.

Before the restitution hearing, the parties agreed to omit a $90 flu shot from the claimed medical expenses and agreed that the restitution amount for medical expenses should be $279,969.

The victim testified at the February 2014 restitution hearing.  For the six years prior to the accident, he sold handmade greeting cards, purses, handmade key chains, and ladies hair accessories, making about $1,200 to $2,000 a month.  Before that, he had been a salesman and sales manager in the automotive industry for 20 years.  He quit working in auto sales to work at home and take care of his ailing parents.  He made $80,000 to $105,000 a year in his last few years in auto sales.  The victim decided to reenter the auto sales business after his wife found out she was pregnant in April 2012.  He went to Von Housen because they were the best dealership in the area.  He was set to start working there the day after the accident.  Due to his injuries he could no longer work as a car salesperson.

The victim's lost income claim covered the period from the date of the accident (July 22, 2012) to the date he submitted his restitution claim (October 22, 2013).  He calculated his lost income for that period by multiplying the $7,448 amount per month referenced by Patricia Motmans in her deposition as the average income for the new salesperson with experience, and then subtracting the $15,500 the victim actually earned in other jobs during that period.  The victim testified that the Von Housen job "would

have been the best job I ever had. I was so excited, my family, my wife. I have no doubt I would have been there on Monday and [would have] been there today."

In a detailed written opinion, the juvenile court ordered restitution for medical expenses in the amount agreed upon by the parties, and also ordered restitution for lost wages at the $96,231 amount sought by the victim.

DISCUSSION

I

The minor contends the juvenile court failed to properly apply section 730.6 in awarding restitution for lost commission income, because section 730.6 required the victim to show a 12-month income pattern.

Section 730.6 provides for victim restitution when a minor described in section 602 causes a victim to incur economic loss as a result of the minor's conduct. (§ 730.6, subd. (a)(1).) Upon finding a minor to be a person described in section 602, the juvenile court must order the minor to pay victim restitution. (§ 730.6, subd. (a)(2)(B).) The juvenile court shall order full restitution unless it finds compelling and extraordinary reasons not to do so and states them on the record. (§ 730.6, subd. (h).) The restitution order shall be in an amount sufficient to fully reimburse the victim for all determined economic losses incurred as the result of the minor's conduct. (*Ibid*.) In addition to making the victim whole, victim restitution also has a deterrent and rehabilitative effect. (*People v. Cookson* (1991) 54 Cal.3d 1091, 1097.)

The juvenile court is vested with considerable discretion in determining the amount of restitution. " '[W]hile the amount of restitution cannot be arbitrary or capricious, "there is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. . . ." [Citation.]' " (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391, fn. omitted.) We review a restitution order for abuse of discretion. (*In re Johnny M.* (2002)

4

100 Cal.App.4th 1128, 1132.) The juvenile court abuses its discretion when it acts contrary to law or when there is no factual and rational basis for the amount of restitution ordered. (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016; *Johnny M.,* at p. 1132.)

Section 730.6, former subdivision (h)(4), now subdivision (h)(1)(C) (Stats. 2014, Ch. 760, § 7, eff. Jan. 1, 2015), authorizes restitution for lost wages or profits, including lost sales commissions. "Lost wages shall include any commission income as well as any base wages. Commission income shall be established by evidence of commission income during the 12-month period prior to the date of the crime for which restitution is being ordered, unless good cause for a shorter time period is shown." (§ 730.6, subd. (h)(1)(C).) Based on that statutory language, the minor argues the victim's lost income must be calculated based solely on his income during the 12 months before the accident when he sold greeting cards and other items. He adds that his crime, by itself, does not establish good cause to ignore the 12-month requirement, and the victim had other income which should have been used to calculate loss of income.

We conclude the juvenile court did not misapply section 730.6. The 12-month language in subdivision (h)(1)(C) provides a means to determine the average amount of commission income, but the statute does not say that such evidence must be limited to the victim's own prior income. Here, the juvenile court determined average prior commission income by considering the income information for another similarly situated salesperson. Although determining future earnings in commission-based jobs like auto sales can sometimes be difficult, substantial evidence supported the restitution award in this case. The victim was experienced in auto sales and had earned significant income in the field before leaving it to care for his elderly parents. Von Housen had low turnover in its sales force and working there was considered the apex of car sales businesses in the area. According to Patricia Motmans's deposition testimony, 10 sales associates at Von Housen made an average of $6,654 per salesperson in July, $5,911 in August, $10,000 in September, $7,178 in October, $11,142 in November, and $10,360 in December.

The juvenile court compared the average monthly income during that period -- $8,540 -- to the $7,448 claimed by the victim and found the claimed restitution was "conservative and well supported by the record."

We conclude the trial court did not abuse its discretion in determining the amount of restitution for lost wages.

## II

The minor further contends the juvenile court failed to offset the restitution with income earned by the victim during the relevant time period. But the restitution amount *included* such an offset. The victim's calculation for his lost income subtracted the amount he actually earned during the relevant time period, and the juvenile court's restitution order adopted that offset amount. The minor's contention lacks merit.

## DISPOSITION

The juvenile court's restitution order is affirmed.

                                             MAURO            , J.

We concur:

      HULL            , Acting P. J.

      ROBIE          , J.

6