Filed 4/20/15  In re Thomas C. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re THOMAS C., a Person Coming Under the Juvenile Court Law. | |
| | D065549 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J230661) |
| v. | |
| THOMAS C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis, Judge.  Affirmed.

Charles R. Khoury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Minor Defendant Thomas C. (Thomas) admitted to five counts of graffiti vandalism. The juvenile court ordered him to pay $10,339.26 in restitution, to reimburse the City of San Marcos for all resultant damage. On appeal, Thomas contends the juvenile court abused its discretion by ordering an amount of restitution that does not reflect the actual costs incurred to remove the graffiti. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Between September 2011 and January 2012, an unknown person wrote the word "Maniak" on public property throughout the City of San Marcos (City). On January 10, 2012, a detective went to the residence of Lucia C. (Lucia), to discuss Thomas, her then-13-year-old runaway son, and obtain information for a missing person's report. While there, the detective asked Lucia whether Thomas was involved in tagging. Lucia showed the detective a mirror tagged with the word "Maniak." The detective took photographs of the mirror.

At the police station, the detective searched through City's "Graffiti Tracker" computer program and discovered 39 different incidents of vandalism featuring the word "Maniak." Two days later, the detective and an assisting deputy returned to Lucia's residence and Lucia consented to a search of Thomas's room. There, they found various items, including a trash can, folder, and crayon bank, tagged with the word "Maniak," and immediately recognized their similarity to the photographs from the Graffiti Tracker database.

2

On January 15, 2012, the detective arrested Thomas for vandalism. On January 18, 2012, the San Diego County District Attorney filed a petition under Welfare and Institutions Code[1] section 602 alleging Thomas committed 30 counts of misdemeanor vandalism in violation of Penal Code section 594, subdivisions (a) and (b)(2)(A). Thomas admitted to five of the vandalism allegations. The juvenile court dismissed the remaining allegations with a *Harvey*[2] waiver, allowing the court to consider the dismissed charges when setting the restitution amount.

City submitted a victim report requesting $10,339.26 for damage to walls, benches, doors, electrical boxes, sidewalks, and fences resulting from Thomas's actions. At the restitution hearing on January 8, 2014, in support of the request for $10,339.26, the People submitted City's victim report, which included the Graffiti Tracker photographs. Next to each photograph, City had listed: (1) moniker; (2) incident number; (3) square footage; (4) surface type; (5) removal date; (6) removal method; and (7) type of camera used to document the graffiti. The People also submitted City's cost matrix, which categorized and assessed the expenses generally incurred, per square foot, to clean up graffiti.

By this matrix, City estimated it would spend approximately $267.40 to remove graffiti from an area spanning less than 10 square feet. The calculation included: $4.45

---

1    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2    *People v. Harvey* (1979) 25 Cal.3d 754.

for abatement supplies, such as removal chemicals; $15.00 for miscellaneous supplies, such as scrub pads, wire brushes, towels, scrapers, buckets, spray bottles, paint brushes, rollers, trays, and tints; $35.00 for truck expenses; $37.95 for field personnel; and $175.00 for an administrative fee, which accounted for the cost of supervision, administrative support, cell phones, radio charges, computer equipment, and office supplies. The cost matrix also estimated increased costs for increased square footage.

The court found the calculations to be fair and rational and ordered Thomas to pay $10,339.26 in restitution to City. On March 5, 2014, Thomas timely filed a notice of appeal. Thomas contends the trial court abused its discretion by ordering a restitution amount that does not reflect the actual costs incurred by City to remove the graffiti.

DISCUSSION

I

*Standard of Review*

A juvenile court's restitution order is reviewed for abuse of discretion. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. ' "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." ' " (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542, quoting *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

4

II

*The Restitution Amount*

Section 730.6 authorizes the juvenile court to order a minor to pay restitution to any victims suffering economic loss as a result of the minor's conduct. (§ 730.6, subd. (a)(2)(B).) It further provides the restitution must be "of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct . . . ." (§ 730.6, subd. (h)(l).) For property damage, that amount is "the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 730.6, subd. (h)(1)(A).)

"Judges have broad discretion in fixing the amount of restitution, and 'the court may use any rational method of fixing the amount of restitution, provided it is reasonably calculated to make the victim whole, and provided it is consistent with the purpose of rehabilitation.' " (*In re Dina V.* (2007) 151 Cal.App.4th 486, 489, quoting *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391-1392.) This means that although "the amount of restitution cannot be arbitrary or capricious, '[t]here is no requirement the restitution order be limited to the exact amount of the loss [for] which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.' " (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 800, quoting *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

Here, City reported Thomas's involvement in 39 separate incidents of vandalism. The People then charged Thomas with 30 counts of misdemeanor vandalism at less than

5

$400 per violation. The People used City's Graffiti Tracker, which included photographs, and listed: (1) moniker; (2) incident number; (3) *square footage*; (4) *surface type*; (5) removal date; (6) *removal method*; and (7) type of camera used to document the graffiti. The People also submitted City's cost matrix, which categorized and assessed the expenses generally incurred, per square foot, to clean up graffiti, and estimated City spent approximately $267.40 per violation. City calculated removal costs to be $10,339.26.

At $400 per violation, Thomas would owe City restitution in the amount of $12,000. At $267.40 per violation, Thomas would owe City restitution in the amount of $8,022. The actual restitution amount falls almost squarely in between these estimations.[3] Given the fact the trial court considered the size, extent, and type of graffiti involved, including the average cost per square foot to paint over or otherwise restore the defaced surfaces, and the trial court retains broad discretion under section 730.6 to estimate the costs necessary both to repair the damage caused and to rehabilitate the minor, the trial court did not abuse its discretion when it ordered Thomas to pay restitution in the amount of $10,339.26. (See *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 310 [explaining "the trial court retains broad discretion under section 730.6 to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti," and to use photographs that reflect the size, extent, and type of graffiti involved, witnesses who estimate the average cost per square foot, or

_____

3    The precise middle between $12,000 and $8,022 is $10,011, a $328.26 difference from the restitution order.

business records that establish the time spent and materials used to provide a rational basis for estimating costs].)

DISPOSITION

The order is affirmed.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

7