Filed 6/9/22  P. v. Allotey CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

BARBARA A. ALLOTEY,

    Defendant and Appellant.

E077257

(Super. Ct. No. FSB17004661)

OPINION

APPEAL from the Superior Court of San Bernardino County.  David J. Mazurek, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant and appellant Barbara A. Allotey pleaded guilty to one count of CALFRESH or Supplemental Nutrition Assistance Program (SNAP) fraud (count 3) in violation of Welfare and Intuitions Code section 10980, subdivision (g)(2). In return, the remaining eleven counts were dismissed and defendant was placed on probation for a period of three years. Following a restitution hearing, the trial court awarded $1,051,036 in restitution to the United States Department of Agriculture (USDA). Defendant's sole contention on appeal is that the trial court abused its discretion in awarding $1,051,036 in victim restitution because there was insufficient evidence to support that amount. We disagree and affirm the restitution order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant's husband, Simeon Welbeck, owned a convenient store, J & K Market, in San Bernardino. Defendant worked at the store, which was authorized to accept USDA SNAP benefits, formerly known as the Food Stamp Program. Between March 11, 2014 and July 7, 2017, two confidential persons completed 22 undercover transactions at the store. Defendant and Welbeck exchanged a total of $1,319 in SNAP benefits for $510 in cash, alcohol, and other non-food and food items during these transactions.

An investigator later interviewed five SNAP recipients who admitted to transacting their SNAP benefits at the store. Between January 1, 2003 and June 30, 2017, these SNAP recipients purchased ineligible items or sold their benefits for cash in an amount greater than $18,000.

Following defendant's guilty plea for one count of SNAP fraud, the trial court held a formal restitution hearing. During the hearing, Carla Young, a special agent with the USDA, testified that in 2014 she began an investigation into defendant and Welneck after the Food and Nutrition Service division of the USDA discovered fraudulent activity involving SNAP benefits at the J & K Market owned by Welbeck. In 2007, J & K Market was authorized to redeem SNAP benefits and was classified as a convenient store. J & K Market had been previously flagged for fraud by the USDA in 2009 and 2013 after unusual transaction activity was detected.

On 22 occasions, Agent Young had a paid informant enter the market and attempt to purchase ineligible items using an EBT card or exchange SNAP benefits for cash. On 17 of the 22 occasions, illegal activity occurred. After Agent Young obtained transaction activity and bank records from the market, she learned that there were unusually high transactions at the store, repetitive transactions, and several transactions where the entire amount of SNAP was depleted, which were not normal shopping patterns. Agent Young prepared a spreadsheet comparing J & K Market's EBT sales to convenient stores within a three-mile radius of J & K. Between January 2011 and June 2017, when the store was closed, J & K Market redeemed over $2.1 million in SNAP, averaging more than $27,000

3

per month in SNAP redemption.  In contrast, during this time period, the three other convenient stores averaged about $591,000 in total SNAP sales, which equated to around $7,500 per month.  J & K Market's SNAP redemption per month was, therefore, almost four times as high as the average of the other three stores.

Agent Young explained that this method of computation is called the "store comparison method" and is an acceptable method used to compute fraud for stores fraudulently redeeming EBT benefits.  Agent Young stated that she had used the store comparison method to figure out losses in approximately 100 cases and that she had received training on how to utilize this method.  She explained that she had learned about the store comparison calculation method through trainings, discussions with other agents, and court cases that have utilized this method.  Agent Young calculated that the total loss to the USDA using the store comparison method was $1,518,162.  To obtain the total loss, Agent Young obtained J & K Market's total snap redemptions, which amounted to $2,109,386.98, and subtracted $591,224.94, which was the average from the three other comparation stores, from J & K Market's total.

Defendant's husband and codefendant Welback testified that he disagreed with Agent Young's calculation because the J & K Market was "a real market" and "not a convenient store" because it was over 4000 square feet of retail space.  He claimed his store was double the square footage of a normal 7-11 store, which was one of the comparison store.  He believed that J & K Market was more like a grocery store, and thus Agent Young incorrectly compared his store to the three convenient stores (two 7-11

4

stores and an AM/PM store). Welback explained that in 2007, when he first applied for authorization to accept SNAP benefits, he applied as a grocery store, but the USDA classified the store as a convenient store. Welbeck believed that since J & K Market was double the size of an average convenient store with a larger SNAP-eligible inventory, it can legitimately sell more SNAP-eligible items. Due to these differences, Welbeck estimated the loss to USDA was about $20,000.

After admission of exhibits and presentation of testimony, the trial court noted that the calculations included figures from 2011 and 2012, and defendant was only charged with crimes between January 2013 and June 2017. The prosecutor agreed that the total should be adjusted to exclude losses during 2011 and 2012. Defendant's counsel argued that there was an insufficient foundation for Agent Young's opinion, and while there was a loss, "the amount in question is unsupportable based on the evidence presented." Codefendant Welback's counsel asserted that the calculations were "flawed" because only three comparisons were used, and J & K Market was double the size of the comparison stores that were used. The prosecutor responded that the People only needed to prove restitution by a preponderance of the evidence and that the calculations used here was "a very rational, reasonable, logical method" that was "based on statistics." The trial court found that the method used by the USDA to calculate loss here was "a standard method generally accepted within that community" and was a "rational basis" for computing the loss. The court concluded that J & K Market's revenues were "grossly disproportionate to other comparable stores within the general area" and ordered

restitution for the period of time between January 2013 and June 30, 2017.  After deducting $467,126.64 in losses from 2011 and 2012, the court ordered victim restitution to the USDA in the amount of $1,056,036, joint and several with codefendant Welbeck. Defendant timely appealed.

## III.

## DISCUSSION

Defendant challenges the victim restitution order requiring her to pay $1,051,036 to the USDA on ground that it was not supported by substantial evidence.  Based on the alleged insufficiency of the evidence, she argues the trial court abused its discretion in awarding the challenged restitution amount.  Defendant believes the comparison method used by the USDA to calculate restitution is not a rational means of computation, and that even if the method is rational, the amount ordered is speculative and an unreasonable estimation of loss.  We disagree.

We review the trial court's restitution order and the calculation of the amount of victim restitution for abuse of discretion.  (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*); *People v. Giordano* (2007) 42 Cal.4th 644, 663.)  The trial court has broad discretion in setting the amount of restitution and can use any rational method of establishing that amount.  (*People v. Sy* (2014) 223 Cal.App.4th 44, 63.)  A court abuses its discretion only if its decision is arbitrary, capricious, or based on a demonstrable error of law.  (*People v. Atkins* (2005) 128 Cal.App.4th 1376, 1382.)  No abuse of discretion

6

will be found "'"'"[w]hen there is a factual and rational basis for the amount of restitution ordered by the trial court.'"'"" (*Millard*, *supra*, at p. 26.)

When a defendant challenges the sufficiency of the evidence to support the trial court's restitution order, we apply the substantial evidence standard. (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.) Under that standard, we do not "'reweigh or reinterpret the evidence; rather, we determine whether there [was] sufficient evidence to support the inference drawn by the trier of fact.'" (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f); Cal. Const., art. I, § 28, subd. (b)(13)(B) ["Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss."].) To the extent possible, restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss." (Pen. Code, § 1202.4, subd. (f)(3).)

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss." (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) The victim restitution statute "does not, by its terms, require any particular kind of proof."

7

(*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) The amount of loss determined by the probation officer based on the victim's statement of loss can be a sufficient basis to set a restitution amount. (*Id*. at pp. 1543-1544.) Once the People have made a prima facie showing of the victim's loss, "'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.'" (*Millard*, *supra*, at p. 26.)

"At the conclusion of the [victim restitution] hearing the trial court must then make an independent judicial determination of the amount of restitution the defendant shall be required to pay based on the available evidence of the [victim's economic losses]." (*People v. Hartley* (1984) 163 Cal.App.3d 126, 130.) "'[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole.'" (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) "'There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.'" (*Id*. at pp. 26-27.)

The trial court's restitution order here was reasonable and supported by substantial evidence. In the present case, the People satisfied their prima facie burden for a restitution award by presenting a detailed and rational statement of economic loss through testimony from Agent Young and documentation to support Agent Young's statement of economic loss. Agent Young explained the method she had used to calculate the

8

restitution amount. She stated that she had utilized the "store comparison method" of computation to determine the amount of losses and that this method was an acceptable method used to compute losses for stores fraudulently redeeming EBT benefits. Agent Young noted that she had used the store comparison method to calculate losses in approximately 100 cases she had worked on and that she had learned about this calculation method through trainings, discussions with other agents, and court cases that have utilized this method. Based on this showing, we conclude the People satisfied their prima facie burden of demonstrating the victim's loss. (*People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1544 [prima facie burden satisfied based on probation officer's report and victim statement listing losses].)

When the People met their prima facie burden of demonstrating the victim's loss, the burden shifted to defendant to demonstrate the amount of the loss was other than that claimed. (*People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.) Thus, it was incumbent upon defendant to "come forward with contrary information to challenge that amount." (*People v. Foster* (1993) 14 Cal.App.4th 939, 947, superseded by statute on another ground as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) Defendant here attempted to challenge the method utilized by Agent Young. However, the trial court found the method used by Agent Young to calculate loss was "a standard method generally accepted within that community" and was a "rational basis" for computing the loss. The court concluded that J & K Market's revenues were "grossly disproportionate to other comparable stores within the . . . general area," thereby rejecting codefendant's

9

testimony that J & K Market was similar to large grocery stores. Defendant failed to rebut the claimed economic losses of the victim. Our role "'"'"begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings."'"'" (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) In the present case, Agent Young's testimony sufficiently met this standard.

Defendant argues the comparative method used by Agent Young was "not a rational means of computation" and the amount ordered was "overly speculative." However, as we previously explained, "'the trial court is vested with broad discretion in setting the amount of restitution [and] it may "'use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole.'"'" (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 800; *People v. Tucker* (1995) 37 Cal.App.4th 1, 6.) All that is required is that the court's award have a "rational" basis (*People v. Ortiz*, *supra*, at p. 799), and the standard of proof at a restitution hearing is preponderance of the evidence. (*People v. Baker*, *supra*, 126 Cal.App.4th at p. 469.) We find nothing irrational in Agent Young's valuation method, which the court relied on, or the amount to be speculative.

Defendant cites to methods used to determine restitution in two federal cases involving SNAP fraud to argue that the comparative method used here "produces an unjust result." Even if there are other more accurate methods of calculating the loss to the USDA, as defendant postulates, the trial court's method for determining the amount of restitution that would make the USDA whole, which was based on Agent Young's

testimony, was not irrational, arbitrary, or capricious.  (See *People v. Giordano*, *supra*, 42 Cal.4th at p. 666 ["[d]espite the trial court's methodological imprecision, defendant has not shown that the amount of restitution ordered was an abuse of the trial court's discretion"].)  "On appeal, we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'  [Citation.]" (*Ibid*., quoting *Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.)

"[I]t is irrelevant that there may be other reasonable ways of calculating [the victim's loss], or even whether this court would have selected the method adopted by the trial court if we had determined the restitution amount in the first instance.  Instead, we may reverse the trial court's order only if we determine that the method the court adopted was arbitrary, capricious, or irrational.  This we cannot do, because there is a rational basis for using the formula the court adopted." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1389.)

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON                    
J.

We concur:

RAMIREZ                    
P. J.

SLOUGH                    
J.

12