Filed 3/8/23  P. v. Montalvo CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO C. MONTALVO,<br><br>        Defendant and Appellant. | A163495<br><br>(San Francisco County<br>Super. Ct. No. SCN232157) |

Antonio Montalvo appeals the judgment following his jury conviction for various sexual offenses and theft.  He appeals an order awarding $83,200 in restitution to the victim for future mental health counseling expenses.  He contends the restitution order must be reversed because the trial court erred in awarding the victim an amount for 10 years of future mental health counseling expenses.  He also argues that an administrative fee the court ordered him to pay under former Penal Code section 1203.1[1] should be vacated because that section does not apply to defendants sentenced to state prison, and even if it did, Assembly Bill No. 177 (2021–2022 Reg. Sess.) (Assembly Bill 177) requires vacation of any unpaid fees imposed.  Finally, Montalvo argues that we should remand for resentencing due to a recent

---

[1] All undesignated statutory references are to the Penal Code.

statutory amendment to section 654, which gives trial courts the discretion to impose a lesser punishment.

We conclude that the trial court did not err in awarding victim restitution in the amount of $83,200, especially since it retained jurisdiction to reduce the amount in the future if indicated by attendant circumstances. The section 1203.1 administrative fee must be vacated under Assembly Bill 177. We also determine that remand for resentencing is warranted, which the Attorney General concedes, to allow the trial court to exercise its new sentencing discretion under section 654. In all other respects, we affirm the judgment.

## BACKGROUND

By amended information, the prosecution alleged that in October 2019, Montalvo committed sexual offenses against Lauren B. and stole her personal property. Montalvo was charged with sexual penetration by foreign object, force, or violence (§ 289, subd. (a)(1)(A), count I); sexual penetration by foreign object of an intoxicated person (§ 289, subd. (e), count II); sexual penetration of an unconscious person (§ 289, subd. (d)(1), count III); assault with intent to commit felony sexual penetration (§ 220, subd. (a)(1), count IV); sexual battery by restraint (§ 243.4, subd. (a), count V); and misdemeanor theft (§ 487, subd. (c), count VI). For the first five charges, the amended information alleged that the offenses had been committed while Montalvo was released on his own recognizance (§ 12022.1, subd. (b)). Montalvo waived his right to a jury trial for the special allegation.

Lauren B. testified at trial that on the night of October 12, 2019, she met a friend at a bar near her apartment. She was intoxicated by that point, and she had no memory of being at the bar. She testified that the next thing she remembered was regaining consciousness on her apartment landing at

2

the top of stairs with a man on top of her, penetrating her vagina with his fingers. She kicked at him, and he eventually got off of her and ran away. Lauren B.'s phone and wallet were missing. A sexual assault examination of Lauren B. revealed DNA that matched Montalvo's. The police also obtained surveillance video from Lauren B.'s neighbor that showed a man matching Montalvo's description coming up the stairs to the apartment landing and going through Lauren B.'s purse, and he appeared to touch her on her hip and "hug" her.

A jury found Montalvo guilty of assault with the intent to commit sexual penetration and misdemeanor theft. The jury found him not guilty of the remaining offenses, but guilty of the lesser included offenses of attempted sexual penetration (§§ 664, 289, subds. (a)(1)(A), (d)(1), (e)) and misdemeanor sexual battery (§ 243.4, subd. (e)(1)).

In August 2021, the trial court sentenced Montalvo to the middle term of four years for assault with intent to commit sexual penetration and a consecutive two-year term for the enhancement for violation of section 12022.1, subdivision (b), for a total of six years in state prison. The court also imposed the middle term of three years for the lesser included offenses of attempted sexual penetration and one year in county jail for the misdemeanor sexual battery, yet stayed those sentences pursuant to section 654. The court imposed a sentence of one year in county jail for the misdemeanor theft conviction, to run concurrently with Montalvo's other sentence. The court also ordered initial victim restitution in the amount of $2,398, which included Lauren B.'s past mental health counseling expenses, and imposed various fees, which included an administrative fee under former section 1203.1, subdivision (l), for the cost of collecting victim restitution. (See former § 1203.1, subd. (l), as amended by Stats. 2020, ch. 328, § 2.)

3

On the day of the sentencing hearing, the prosecution filed a request for victim restitution for Lauren B.'s future mental health counseling in the amount of $83,200, calculated for mental health counseling sessions for a period of 10 years at her therapist's hourly rate of $160. The trial court held a restitution hearing the following month. At that time it heard the parties' arguments regarding the sufficiency of evidence to support an award for mental health counseling for a period of ten years. Having done so, the court ordered defendant to pay restitution in the full amount requested by the prosecution. The $83,200 restitution amount included the $2,398 previously awarded to Lauren B. at sentencing. In ordering the restitution amount, the trial court did so "without prejudice to the defense making a motion at either the five-year period or sometime after that…to determine whether restitution is still being used in accordance with the Court's order…."

This appeal followed.

## DISCUSSION

### A. Victim Restitution

Montalvo argues that the trial court erred in ordering future mental health counseling costs because insufficient evidence existed that Lauren B. would need counseling for a period of 10 years. Before addressing the merits of Montalvo's argument, we begin with the governing law and applicable standard of review.

### 1. Governing Law and Standard of Review

Crime victims have a constitutional right to restitution under article I, section 28, subdivision (b), of the California Constitution. Under the implementing legislation, section 1202.4, "a crime victim is entitled to restitution for 'any economic loss' incurred as the result of the defendant's criminal activity." (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 798.)

4

Section 1202.4 authorizes a trial court to order restitution for the victim's prospective economic losses. (*People v. Giordano* (2007) 42 Cal.4th 644, 657–658.) Prospective economic losses can include mental health counseling expenses. (*Id.* at 658.) The prosecution bears the initial burden of making a prima facie showing of the likely amount of future losses. (*People v. Millard* (2009) 175 Cal.App.4th 7, 30 (*Millard*).) Once the prosecution has made its prima facie showing, the burden shifts to the defendant to show that there are no prospective losses or that the amount is overstated. (*Ibid.*) The standard of proof is preponderance of the evidence. (*Id.* at 26.)

We review the restitution order for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) "We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) So long as "there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court. [Citation.]" (*People v. Dalvito* (1997) 56 Cal.App.4th 557, 562.)

In a criminal case, " '[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action . . . .' " (*People v. Bernal* (2002) 101 Cal.App.4th 155, 162.) Rather, the court may determine the amount of restitution according to "any rational method that could reasonably be said to make the victim whole." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1387.) Bearing these standards in mind, we turn to the relevant factual background.

## 2. Factual Background

The prosecution's request for restitution for Lauren B.'s anticipated future counseling costs in the amount of $83,200 was based in part on a letter from Lauren B.'s therapist, who had been treating Lauren B. on a weekly basis because of Montalvo's assault. In the letter, the therapist stated that she has experience treating over 100 sexual assault and sexual abuse victims, and that it is common for the effects of sexual trauma to emerge gradually, sometimes over years or decades, and to occasionally resurface after having been resolved during treatment. Based on her experience, the therapist stated that "it is essential that [Lauren B.] is granted sufficient restitution to allow for a non-linear treatment timeline, with allowance for the possibility" that her symptoms could remain intermittently active for many years. "In light of this possibility," the therapist recommended "the equivalent of 10 years of psychotherapy, to be used at [Lauren B.'s] discretion, with no imminent time limit or expiration date. This will allow her to attend therapy in whatever increments are appropriate over the course of her life." The therapist stated her hourly rate as $160. The prosecution also noted that the court had heard testimony from Lauren B. regarding the impact the assault had on her. In particular, she had testified at trial that she "felt terrible, no longer like herself," was terrified, and was unable to sleep without medication. The court had observed Lauren B. crying throughout her testimony.

Montalvo did not file any opposition to the restitution request, but he argued at the restitution hearing that there was no evidence before the court that Lauren B. would be receiving mental health treatment for ten years, as the therapist's letter "makes it clear that even [the therapist] has no real

6

knowledge of what therapy Laureen [sic] will in fact use or need in the future."

After hearing the parties' arguments, the trial court found the therapist's hourly rate reasonable. It further found that it was reasonable for the therapist to give an opinion based off "a hundred plus cases and experience, that someone may need counseling periodically over a ten-year period on a sexual assault case." The trial court also considered evidence of the impact Montalvo's crimes had on Lauren B.'s mental health. The court ordered victim restitution in the amount of $160 per weekly session for a ten-year period, for a total of $83,200. The trial court also noted that it "retains jurisdiction to modify the order, pursuant to both 1202.4 as well as 1203.46 as currently ordered."

### 3. Montalvo's Contentions

On appeal, Montalvo contends the prosecution failed to make a prima facie showing that Lauren B. was likely to need 10 years of mental health counseling in the future. He does not dispute that the therapist's hourly rate of $160 is reasonable, but he characterizes the therapist's recommendation for a decade of weekly counseling sessions as a "precautionary measure" for the "possibility" that Lauren B. may need treatment later in life. As a result, he argues that the trial court's determination that Lauren B. would need counseling for that long was speculative and arbitrary. The Attorney General disagrees with this characterization, arguing that the therapist had opined based on her experience that Lauren B. would require approximately 10 years of therapy. The Attorney General further contends that the 10-year period of counseling was reasonable given the therapist's opinion and the trial court's knowledge of the impact Montalvo's crimes had on Lauren B.

7

"Many, if not all, of the categories of loss compensable as direct restitution include losses that are incurred after the occurrence of the crime, and which may continue to be incurred for a substantial period of time following a restitution hearing." (*People v. Giordano, supra,* 42 Cal.4th at 657–658.)  In *Giordano*, the Supreme Court further specifically acknowledged the presence of "mental health counseling expenses" that may be incurred after a restitution hearing is held.  (*Ibid.*; see also § 1202.4, subd. (f)(3)(b) providing for "mental health counseling expenses.")  "…[W]hen determining that medical expenses paid after a sentencing hearing may be included in a restitution order, 'nothing in the language of the Constitution suggests an intent to limit the right to restitution for financial losses occurring within a particular time frame, or restitution to expenses incurred before sentencing.' " (*Ibid.*)

The *Millard* opinion, *supra*, 175 Cal.App.4th 7 is also instructive.  The defendant was convicted of driving under the influence and causing bodily injury to another person after crashing his SUV into a motorcycle being driven by the victim.  (*Millard, supra*, at p. 13.)  The trial court awarded the victim $750,000 for future lost earnings.  (*Id.* at 22.)  On appeal, the defendant argued that this was error because the evidence was insufficient to support a finding that the victim had lost any particular amount of future earnings.  (*Id.* at 29.)  The Fourth District disagreed, concluding that the prosecution had made a sufficient prima facie case that the victim had lost $750,000 in future earnings based on the victim's testimony regarding his past earnings and his belief that he would be unable to return to his former job, the assumption that the victim would have retired in his mid-60's, and the trial court's observation that the victim was " 'a severely injured man.' " (*Ibid.*)  The appellate court noted that the victim had testified regarding his

hope that he would eventually find another job, but it concluded that there was no evidence showing "that prospect was sufficiently definite to preclude a reasonable inference by the court that [the victim] would be unable to work again during his remaining preretirement years." (*Id.* at 30.)

Similarly, here, the therapist's belief that 10 years of mental health counseling would constitute "sufficient restitution" for Lauren B. and the evidence that Lauren B. was still experiencing severe mental distress more than a year after the assault provide a factual and rational basis for the restitution award. The therapist opined that based on her experience treating over 100 sexual assault victims, Lauren B. needed "sufficient restitution" for mental health treatment, and she recommended 10 years' worth of therapy. The trial court reasonably could have inferred from this opinion, the therapist's ongoing treatment of Lauren B., and the therapist's observations regarding the long-term effects of sexual assault (i.e., that symptoms often emerge gradually, potentially requiring therapy for decades, and that it is common for symptoms to resurface on occasion requiring additional treatment) that Lauren B. would reasonably require 10 years of therapy during her lifetime. The likelihood that Lauren B. would need extensive mental health counseling is further supported by evidence showing the significant impact Montalvo's crimes had on Lauren B.'s mental health. This evidence includes Lauren B.'s testimony that she could no longer sleep at night, that she was "now scared to do a lot of things that are normal for a 26 year old," and that she had been struggling with anxiety and depression. We conclude that this prima facie showing was sufficient to shift the burden

9

to Montalvo to show that the amount awarded was not justified.[2]  Montalvo, however, presented no such evidence.

In arguing that the restitution award is based on conjecture, Montalvo focuses on isolated portions of the therapist's letter.  First, he points out that the therapist had stated that it would be "extremely difficult to anticipate the length of required treatment. . . ," and he appears to suggest that the therapist's letter shows that a quick recovery for Lauren B. is just as likely as a years-long recovery.  However, the therapist stated that the difficulty in determining treatment length arises from the fact that the effects of sexual trauma often emerge gradually over years or even decades.  Although the therapist expressed hope that Lauren B. would recover swiftly from her trauma, nowhere in her letter does the therapist indicate that a quick recovery was likely.  Determining future losses is necessarily imprecise to a degree, but the trial court rationally determined based on the evidence that mental health counseling expenses for a period of 10 years would reasonably make Lauren B. whole.  (*Millard, supra*, 175 Cal.App.4th at 26–27.)  Montalvo also points out that the therapist stated that there was a "possibility" that Lauren B.'s symptoms would remain "intermittently active" for many years, which he claims shows that the therapist was speculating that Lauren B. *might* need counseling later in life.  But the therapist had opined, based on her experience treating sexual assault victims, that it was "common" for sexual trauma symptoms to occasionally resurface.  Given the therapist's treatment of Lauren B. and her recommendation of future mental

---

[2]  Without citing to legal authority, Montalvo suggests that victim restitution is limited to "reasonably certain" losses.  Whether losses are "reasonably certain" to occur is the standard for determining prospective damages in civil cases.  (*David v. Hernandez* (2017) 13 Cal.App.5th 692, 722.)

health counseling sessions, the trial court reasonably credited the therapist's view that such a possibility was likely to occur in this case.

Montalvo contends that the trial court's calculation method contradicts section 1202.46. That section provides, in pertinent part: "when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined." (§ 1202.46.) But Montalvo's argument presumes the trial court did not have a rational or factual basis for awarding Lauren B. $83,200 in restitution. To read section 1202.46 otherwise ignores the law establishing that a trial court may award restitution under section 1202.4 for prospective economic losses where there is a rational and factual basis for doing so. (*People v. Giordano*, *supra*, 42 Cal.4th at pp. 657–658.)

Importantly, the trial court recognized that even though rational and factual grounds supported restitution for mental health counseling expenses, those amounts could later be subject to verification and modification as future circumstances might necessitate. So, in ordering the restitution amount, as previously mentioned, the trial court did so "without prejudice to the defense making a motion at either the five-year period or sometime after that…to determine whether restitution is still being used in accordance with the Court's order…." Additionally, the trial court retained "…jurisdiction to modify the order, pursuant to both 1202.4 as well as 1203.46 as currently ordered." As a result, the trial court put in place a significant and prudent check to its restitution order, ensuring the amount awarded would be used for the receipt of mental health counseling over the course of future years.

11

In sum, we conclude that substantial evidence enabled the trial court to determine, by a preponderance of the evidence, that Lauren B. was likely to incur future mental health counseling expenses in her lifetime for a total period of 10 years due to Montalvo's crimes.

## B. Administrative Fees

Over defense counsel's objection, the trial court ordered Montalvo to pay an administrative fee under former section 1203.1 for the cost of collecting victim restitution. (See former § 1203.1, subd. (l), as amended by Stats. 2020, ch. 328, § 2.) Montalvo contends that we should vacate the fee under Assembly Bill 177. The Attorney General agrees, as do we, that the administrative fee must be vacated under Assembly Bill 177.

In September 2021, the Legislature enacted Assembly Bill 177, which amended section 1465.9 by adding subdivision (b). Subdivision (b) provides that on or after January 1, 2022, any unpaid portion of fees imposed under several sections, including section 1203.1, "as those sections read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (b).) This language makes clear that any balance still owing of the administrative fee imposed pursuant to former section 1203.1 is now "unenforceable and uncollectible," and the portion of the judgment imposing that fee must be vacated.[3] (§ 1465.9, subd. (b).)

_____

[3] Montalvo argues that under *In re Estrada* (1965) 63 Cal.2d 740, Assembly Bill 177 applies retroactively to this matter. *In re Estrada* provides that absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect. (*In re Estrada, supra*, at p. 744.) We need not decide whether this rule applies here because by its plain language, subdivision (b) of section 1465.9 applies retroactively to any unpaid portion of the administrative fee as of January 1, 2022. (See *People v. Greeley* (2021) 70 Cal.App.5th 609, 625–626 [finding that

12

Montalvo does not argue that he paid any portion of the administrative fee or that any amount should be refunded. He seeks only to vacate that portion of the judgment imposing the fee. We therefore need not and do not address Montalvo's argument that former section 1203.1 does not apply in this case.

## C. Resentencing

Montalvo argues that he is entitled to resentencing because Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518) recently amended section 654 to give trial courts discretion to impose a lesser punishment. The Attorney General does not dispute that remand for resentencing is required under Assembly Bill 518.

At the time of Montalvo's sentencing, section 654 required the court to punish an act that was punishable in different ways by different laws only "under the provision that provides the longest potential term of imprisonment." (Former § 654, subd. (a), as amended by Stats. 1997, ch. 410, § 1.) The trial court therefore imposed the sentence for assault with intent to commit sexual penetration and stayed execution of the sentences for attempted sexual penetration and misdemeanor sexual battery, finding that the former offense had the greatest term of imprisonment. Assembly Bill 518 thereafter amended section 654 to provide "the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

*In re Estrada*'s presumption of retroactivity does not apply to section 1465.9, subdivision (a), based on language in that subdivision that is also found in subdivision (b) of that section].)

13

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) Where a trial court could not have acted with " ' "informed discretion" ' " "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

We agree with the parties' conclusion that Assembly Bill 518 applies retroactively to this case because judgment was not final at the time the amendment became effective on January 1, 2022. (*In re Estrada, supra*, 63 Cal.2d at pp. 744–745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect]; *People v. Caparaz* (2022) 80 Cal.App.5th 669, 688 [Assembly Bill 518 applies retroactively to non-final cases].)

We also agree with the parties that remand is required here because there is no clear indication in the record that the trial court would have imposed the sentence for assault with intent to commit sexual penetration even if it had discretion to instead impose the lesser sentence for attempted sexual penetration or misdemeanor sexual battery. The trial court did not make any express comments at the sentencing hearing indicating an intent to impose the greater sentence. The trial court's only stated reason for imposing the greater sentence was section 654. Moreover, the court found several mitigating factors, and based on those factors, it imposed the middle term for the sexual offenses rather than the maximum term. Under these circumstances, we cannot conclude that the record clearly shows that the trial court would decline to exercise its discretion to lessen the sentence.

14

Accordingly, we vacate appellant's sentence and remand this matter to the trial court to apply section 654, as modified by Assembly Bill 518, in the first instance in order to determine his new sentence. The court shall also consider other recent legislative changes to the sentencing laws, as applicable. We express no opinion as to the appropriate outcome of any future sentencing determination.

## DISPOSITION

We affirm the restitution order in the amount of $83,200. We vacate the portion of the section 1203.1 administrative fee that remains unpaid as of January 1, 2022. We remand to the trial court for resentencing to allow the trial court to exercise the discretion conferred on it by Assembly Bill 518. In all other respects, the judgment is affirmed.

DEVINE, J.*

WE CONCUR:


MARGULIES, ACTING P.J.


BANKE, J.


A163495N

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.